UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TYLOR PEREZA, | Case No. 2:15-CV-77 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| PROGRESSIVE DIRECT INSURANCE CO., | |
| Defendant(s). | |

Presently before the court is plaintiff Tylor Pereza's (hereinafter "plaintiff") motion to remand to state court. (Doc. # 8). Defendant Progressive Direct Insurance Co. (hereinafter "Progressive") filed a response, (doc. # 11), and plaintiff filed a reply, (doc. # 12).

**I.  Background**

This case arises out of an automobile accident that occurred on October 10, 2013. (Doc. # 11). Plaintiff Pereza was struck from behind by non-party tortfeasor Jessica Andrade. (Doc. # 11). As a result of the accident, plaintiff asserts that he has incurred $30,084.31 in medical expenses. (Doc. # 12).

Prior to the accident, plaintiff entered into an insurance contract with Progressive, which included underinsured motorist (hereinafter "UIM") coverage of $100,000 per accident. (Doc. # 11). At the time of the accident, Ms. Andrade carried automobile liability insurance limits of $15,000 per person and $30,000 per accident. (Doc. # 11).

Prior to this litigation, Pereza and Progressive engaged in settlement negotiations, wherein Progressive made an offer in UIM benefits to Pereza.[1] (Doc. # 12, exhibit 1). Plaintiff

---

[1] Progressive made multiple offers throughout the settlement negotiations, the last of which was an offer of $27,586.00 in UIM benefits. (Doc. # 12, exhibit 1). Plaintiff claims that

**James C. Mahan**
**U.S. District Judge**

subsequently filed this lawsuit. In his complaint, plaintiff asserts four causes of action: (1) breach of contract, (2) fraud, (3) breach of covenant of good faith and fair dealing, and (4) violations of the Nevada Unfair Claims Practices Act.  (*See* doc. # 8, exhibit 1).  The complaint states that while the exact amount of damages will be determined according to proof, the amount his losses will be "in excess of $10,000."  (*See* doc. # 8, exhibit 1).

Furthermore, the complaint seeks consequential damages, compensatory damages (including economic and non-economic damages for emotional distress, humiliation, and mental anguish), punitive damages, and attorneys' fees.  (*See* doc. # 8, exhibit 1).

## II.      Legal Standard

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

Removal of a case to a United States district court may be challenged by motion.  28 U.S.C. § 1441(c).  A federal court must remand a matter if there is a lack of jurisdiction.  *Id.*  Removal statutes are construed restrictively and in favor of remanding a case to state court.  *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

For a district court to have diversity jurisdiction under 28 U.S.C. § 1332, the parties must be completely diverse and the amount in controversy must exceed $75,000.00.  *See* 28 U.S.C. § 1332(a); *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

On a motion to remand, the removing defendant faces a presumption against removal and bears the burden of establishing that removal is proper by a preponderance of the evidence.  *Gaus*, 980 F.2d at 566–67; *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996).  Therefore, when jurisdiction is based on diversity jurisdiction, the removing defendant must show

---

this is the "uncontested" amount of his claim.  However, as the letter from Progressive to Pereza indicates, this pre-litigation settlement offer will not be construed as an "uncontested" amount. (*See* doc. # 12, exhibit 1).

**James C. Mahan**
**U.S. District Judge**

- 2 -

that it is "more likely than not" that the amount in controversy exceeds the statutory amount required. *Sanchez*, 102 F.3d at 404.

"Generally, the amount in controversy is determined from the face of the pleadings." *Garcia v. Dawahare*, No. 2:06-CV-00695-KJD-LRL, 2006 WL 2583745, at *1 (D. Nev. Sept. 6, 2006) (citing *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000); *Singer v. State Farm Mut. Auto. Ins., Co.*, 116 F.3d 373, 375 (9th Cir. 1997)). However, under the Nevada Rules of Civil Procedure, a claimant is prohibited from pleading damages in a specific amount over $10,000, and may plead only for damages "in excess of $10,000." N.R.C.P. 8(a).

In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002); *Jackson v. Am. Bankers Ins. Co. of Fla.*, 976 F. Supp. 1450, 1454 (S.D. Ala. 1997).

Section 1332(a)'s amount in controversy requirement excludes only "interest and costs." 28 U.S.C. § 1332; *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). Therefore, attorneys' fees may be included in the determination of the amount in controversy if a statute authorizes fees to a successful litigant. *Guglielmino*, 506 F.3d at 700; *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998). Furthermore, "[i]t is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001).

**III.   Discussion**

Progressive claims that plaintiff seeks contractual damages up to $100,000, the amount of his UIM policy, and that this alone meets the jurisdictional minimum. Plaintiff argues that the sum total of his claims would not exceed $75,000 of that amount.

One of plaintiff's arguments follows a strange logic. Under plaintiff's view, Progressive has made an offer of $27,586, which plaintiff has requested from Progressive. Therefore, plaintiff's

**James C. Mahan**
**U.S. District Judge**

- 3 -

legal claim is, at most, for $72,414,[2] which is less than $75,000. Plaintiff also claims that Progressive failed to meet its evidentiary burden in using plaintiff's claim for punitive damages to meet the jurisdictional minimum amount. Plaintiff does not address how his own claim for attorneys' fees factors into the analysis.

As an initial matter, plaintiff's argument that the value of the contractual claim is $72,414, must fail. The parties have not settled, and the offer of $27,586 was made to resolve the dispute, which plaintiff plainly rejected by filing the suit against Progressive. Therefore, it is clear that plaintiff could, in theory, recover breach of contract damages in the amount of the entire UIM policy, $100,000.

Regardless, it is Progressive's burden to demonstrate, by a preponderance of the evidence, that plaintiff's claims exceed the jurisdictional minimum. Progressive asserts that plaintiff is seeking (1) $30,467.31 in special damages for medical expenses incurred,[3] (2) general damages for the physical and emotional impact the accident has had on his life (including for "emotional distress, humiliation, and mental anguish"), which are anticipated to be around $80,000–$95,000, (3) attorneys' fees, which could total "tens of thousands of dollars," and (4) punitive damages, which "alone could exceed $75,000." Progressive argues that when these damages are added up, the amount in controversy far exceeds the jurisdictional minimum. Progressive's arguments with respect to each class of damages will be addressed in turn.

*A. Special damages*

Plaintiff claims to have already incurred medical expenses in the amount of $30,084.31. Progressive argues, and plaintiff does not dispute, that this amount clearly falls within the amount

---

[2] This figure represents the entirety of the UIM policy, $100,000, less the amount offered by Progressive, $27,586.

[3] Although Progressive claims that the amount in special damages is $30,467.31, plaintiff has stated in his motion for remand and his reply brief that the amount is $30,084.31. However, considering all of the damages alleged, this discrepancy is not determinative of this court's decision.

**James C. Mahan**
**U.S. District Judge**

- 4 -

in controversy. No other specific damages are alleged, so this leaves $44,915.70 in damages necessary to cross the $75,000 threshold.

### B. General damages

Progressive anticipates that general damages for future medical care, as well as for "emotional distress, humiliation, and mental anguish," will be around $80,000–$95,000. However, Progressive provides no evidence for this number, apart from the general assertion that "general damage awards sometimes equals many multiples of the incurred special damages." Therefore, while the court recognizes that general damages should be included in the amount in controversy, Progressive does not adequately corroborate its specific value of $80,000–$95,000.

### C. Punitive damages

For this court to consider punitive damages, Progressive must show that punitive damages are legally recoverable under state law. *Davenport v. Mut. Ben. Health & Acc. Ass'n*, 325 F.2d 785, 787–89 (9th Cir. 1963) (stating that punitive damages should not be considered if it is "legally impossible" to recover such damages under state law). Once this is done, Progressive must then show that, assuming plaintiff's claims were properly proven, the amount of punitive damages awarded (taken together with plaintiff's other claims for relief) would, more likely than not, exceed the jurisdictional minimum. *See id.* (focusing on whether the appellant's claim for punitive damages could meet the jurisdictional minimum if his case were proven).

In this case, the amount that plaintiff seeks in punitive damages is unclear. To establish the likely amount of punitive damages, the defendant may introduce evidence of jury verdicts in cases involving similar facts. *Flores v. Standard Ins. Co.*, No. 3:09-CV-00501-LRH-RAM, 2010 WL 185949, at *5 (D. Nev. Jan. 15, 2010).

Under Nevada law, a jury may award punitive damages against an insurer who acts in bad faith. Nev. Rev. Stat. 42.005(1); *Flores*, 2010 WL 185949, at *5; *McCaa v. Mass. Mut. Life Ins. Co.*, 330 F. Supp. 2d 1143, 1149 (D. Nev. 2004). This amount is also not capped by statute. Nev. Rev. Stat. 42.005(2)(b). Therefore, it is not "legally impossible" for plaintiff to recover punitive damages in excess of the jurisdictional minimum in this case.

**James C. Mahan**
**U.S. District Judge**

- 5 -

1    Progressive argues that punitive damages alone could exceed the $75,000 jurisdictional
2  minimum. In support of this argument, Progressive cites a single case demonstrating that jury
3  verdicts in bad faith insurance cases can lead to large punitive damage awards. *See Merrick v.*
4  *Paul Revere Life Ins. Co.,* 594 F. Supp. 2d 1168, 1192 (D. Nev. 2008) (upholding jury's punitive
5  damages award against one defendant in the amount of $24,000,000—an 8.18:1 ratio of punitive
6  damages to actual and potential harm—and reducing jury's punitive damages award against
7  another defendant to $26,394,765.39—a 9:1 ratio of punitive damages to actual and potential
8  harm).

9    However, Progressive does not allege, and this court does not find, that this case is factually
10 similar to *Merrick*. In *Merrick*, this court determined that the insurers (1) intentionally engaged in
11 misconduct towards thousands of insureds for their own financial gain, (2) deliberately targeted
12 those who were physically, mentally, emotionally, and financially vulnerable, (3) repeatedly
13 subjected insureds to their bad practices and subjected hundreds of thousands to the risk of those
14 bad practices, and (4) acted maliciously with trickery and deceit towards their insureds and again
15 subjected hundreds of thousands of insureds to the risk of their misconduct. *Merrick*, 594 F. Supp.
16 2d at 1189.

17   Here, plaintiff claims that Progressive intentionally misrepresented the scope of plaintiff's
18 coverage, and that Progressive has no reasonable basis for denying him full coverage. Assuming
19 these claims to be true, such action is not equivalent to, or as reprehensible as, that conducted in
20 *Merrick*. Therefore, *Merrick* provides a poor analogy to the case at hand.

21   However, Progressive has provided some evidence that punitive damage awards may be
22 quite high in bad faith insurance cases. Although Progressive has not provided strong evidence to
23 help adduce the likely amount of punitive damages in this case, this court recognizes that punitive
24 damages are legally possible in this case, and that even a much smaller award of punitive damages
25 than that provided in *Merrick* (*e.g.*, a 1:1 ratio of punitive damages to actual and potential harm)
26 would likely put the amount in controversy over the jurisdictional minimum in light of plaintiff's
27 other claims.

28 . . .

**James C. Mahan**
**U.S. District Judge**

*D. Attorneys' fees*

For this court to include attorneys' fees in the amount in controversy, Progressive must show that such fees are authorized by statute. *See Galt G/S*, 142 F.3d at 1156. Once this is accomplished, Progressive then must provide factual support for its determination of the amount of attorneys' fees likely at issue. *McCaa*, 330 F. Supp. 2d at 1150.

Generally, Progressive must show that if plaintiff's claims were properly proven, the amount of attorneys' fees awarded (taken together with plaintiff's other claims for relief) would, more likely than not, exceed the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 699.

Under Nevada law, a prevailing party is entitled to recover attorneys' fees in two situations: (1) when he or she does not recover more than $20,000.00; and (2) when, without regard to the recovery sought, the opposing party's defense was "brought without reasonable grounds or to harass the prevailing party." Nev. Rev. Stat. 18.010. Therefore, attorneys' fees may be included in the amount in controversy.

However, Progressive provides little support for the amount of this claim, other than noting that a potential award of attorneys' fees "could eventually total tens of thousands of dollars in a contested bad faith case." Therefore, this court attaches no weight to Progressive's valuing of attorneys' fees at "tens of thousands of dollars." Nonetheless, the fact that attorneys' fees are sought will be considered in determining the total amount in controversy.

*E. Total amount in controversy*

Progressive must demonstrate by a preponderance of the evidence that the sum total of plaintiff's claims would exceed $75,000 if proven. This court finds that the defendant has met this burden.

Plaintiff seeks compensatory damages, which include economic and non-economic damages. This amount is, at minimum, $30,084.31—the amount incurred in medical expenses. However, this amount is certainly greater, as plaintiff seeks to recover for "emotional distress, humiliation, and mental anguish." In addition to this, plaintiff seeks breach of contract damages in excess of $10,000, including consequential damages.

**James C. Mahan**
**U.S. District Judge**

- 7 -

Plaintiff makes it clear that the full value of the UIM policy—$100,000—is likely in controversy. Plaintiff states that the "contractual claim [has] a value of $72,414," which is the difference between the UIM policy limit and the prior settlement offer. In essence, plaintiff argues that the full value of the policy cannot be at stake because Progressive offered a portion of the policy during settlement negotiations. However, as stated earlier, plaintiff has not received any portion of the policy, as Progressive and plaintiff never reached an agreement.

Furthermore, plaintiff seeks punitive damages and attorneys' fees. This court finds that if plaintiff successfully proved these claims, these claims would likely lead to large monetary awards. This is due to the nature of the case (a contested bad faith insurance case), and the amount this represents relative to the plaintiff's other claims (representing a ratio of less than 1:1). For the foregoing reasons, plaintiff's motion to remand will be denied.

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's motion to remand, (doc. # 8), be, and the same hereby is, DENIED.

DATED April 8, 2015.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 8 -